IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 11-319 |
| IRA J. PRESSMAN | : | |

## ORDER

AND NOW, this       day of              , 2011, it is hereby

**ORDERED**

that the government's unopposed motion to disclose grand jury records pursuant to Rule 6(e)(3)(E)(i) of the Federal Rules of Criminal procedure is GRANTED. The government may disclose financial records identified in the government's motion to Lawrence J. Kotler, the attorney representing Lynn E. Feldman, Chapter 7 Trustee for the bankruptcy estates for Ira Pressman and PJI Distribution Corp., Case Number 11-13080 (Bkrtcy E.D. Pa). This Court finds that the government has demonstrated a particularized need which outweighs the public interest in grand jury secrecy.

BY THE COURT:

_____
**HONORABLE JAN E. DUBOIS**
*Judge, United States District Court*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| v. | : | **CRIMINAL NO. 11-319** |
| **IRA J. PRESSMAN** | : | |

### GOVERNMENT'S UNOPPOSED MOTION TO DISCLOSE GRAND JURY RECORDS PURSUANT TO RULE 6(e)(3)(E)(i) OF THE FEDERAL RULES OF CRIMINAL PROCEDURE

The United States of America, by its undersigned attorneys, Zane David Memeger, United States Attorney for the Eastern District of Pennsylvania, and Louis D. Lappen, First Assistant United States Attorney for the district, hereby requests the Court to allow the disclosure of financial records obtained by grand jury subpoena pertaining to this case to Lawrence J. Kotler, the attorney representing Lynn E. Feldman, Chapter 7 Trustee for the bankruptcy estates for Ira Pressman and PJI Distribution Corp., Case Number 11-13080 (Bkrtcy E.D. Pa). The defendant, Ira Pressman, through his attorney, John McMahon, Esquire, has advised the government that he does not object to this motion.

On July 22, 2011, the defendant pleaded guilty to fraud and money laundering offenses for executing a Ponzi fraud scheme that caused millions of dollars in losses to innocent investors. The factual background of this criminal activity is as follows:

In 1992, defendant Pressman formed a company called WGP that specialized in buying and selling overstock books and other merchandise. As part of his business, Pressman solicited individuals to invest in specific closeout inventory deals, promising investors a return

1

on their investments. Most of these investment deals were legitimate, in that the deals actually existed and investors actually received a portion of the profits when the closeout goods were sold. In 2006, however, shortly before Pressman sold WGP, he began soliciting individuals to invest in fictitious closeout deals. In 2006, the defendant sold WGP for $1.5 million, and used part of the proceeds from the sale of WGP to pay off investors for the fictitious deals.

After selling WGP, Pressman formed another company called PJI Distribution Corporation ("PJI"). Just like with WGP, Pressman also represented PJI to specialize in the buying and selling overstock inventory. Soon after forming PJI, in approximately July 2006, Pressman again began soliciting investors to invest in specific overstock inventory deals. While some of the deals initially were legitimate, most deals were fictitious. In all cases, Pressman promised investors a substantial return on their investments. Pressman told the investors that they could earn as much as 100 percent annual returns on their investments. Pressman further told the investors that these deals presented no risk to them because he had already lined up both a seller and buyer of the overstock merchandise. Pressman told the investors that he needed their money because there was a delay between when he purchased the merchandise, and when he would be paid for the merchandise. Over time, Pressman stopped doing legitimate deals altogether, and instead used money provided by new investors to pay returns to old investors.

To cover up his scheme, and make it look as if the overstock deals were legitimate, Pressman arranged with several other individuals to engage in sham transactions. Specifically, Pressman arranged with these other individuals who were also in the overstock merchandise business to issue fake purchase orders. Pressman would wire money to these individuals, and they would immediately wire the money back to Pressman, while keeping up to

five percent of the money as a fee for conducting the transaction. Pressman would provide both the fake purchase order and the wire transfer documents to victims as proof that the deals were legitimate, thereby inducing victims to keep investing with Pressman. In total, Pressman defrauded more than 20 individuals, causing losses of more than $6 million.

The government cannot prove that the investors who were paid as part of the Ponzi scheme are criminally liable. These investors, however, were arguably unjustly enriched with other investors' money. See In re Lake States Commodities, Inc., 253 B.R. 866, (Bkrtcy. N.D. Ill. 2000) (in bankruptcy proceeding, investors who received proceeds of a Ponzi scheme, even though they had no knowledge of the fraud, were not entitled to keep any return above the amount of their investments).

This matter is also the subject of a bankruptcy action. Lawrence J. Kotler is the attorney representing Lynn E. Feldman, Chapter 7 Trustee for the bankruptcy estates for Ira Pressman and PJI Distribution Corp., Case Number 11-13080 (Bkrtcy E.D. Pa). As part of this action, the bankruptcy trustee is resolving numerous financial issues, including the proper disposition of assets to fraud victims.

In this criminal case, the defendant likely will be ordered to pay restitution. However, due to limited available funds, it appears unlikely that the victims will receive any significant amount of restitution. A few victims have contacted the government and requested information concerning the individuals who received payouts on their "investments," so that they could consider pursuing legal action against these individuals. The government possesses financial information obtained through grand jury subpoenas that will help the government and the bankruptcy trustee resolve these issues. This information was obtained from the following

financial institutions: Susquehanna National Bank, Univest Corporation of Pennsylvania., Bank of America, and Eagle National Bank. Other financial records were obtained from the Montgomery County District Attorney's Office without a grand jury subpoena.

This financial information includes the names and addresses of the investors who got paid, how much each invested and was paid, where they deposited the money, and in some cases, where the money was transferred. The government is seeking the Court's permission to disclose this information, along with copies of the supporting documents, to the bankruptcy trustee via her attorney, Lawrence J. Kotler.

Rule 6(e)(3)(E)(i) of the Federal Rules of Criminal procedure states that a court may authorize disclosure of a grand jury matter "preliminarily to or in connection with a judicial proceeding." The Third Circuit has held that "[t]o support a motion for a judicially ordered disclosure of grand jury testimony, a party must show a particularized need for that information which outweighs the public interest in secrecy." United States v. McDowell, 888 F.2d 285, 289 (3d Cir. 1989). Moreover, "[o]nce such a need is shown, the district court 'must weigh the competing interests and order so much disclosure as needed for the ends of justice.'" Id.

The government has an interest in providing information about the investors who received money so that the trustee can determine the losses suffered by the victims for purposes of distributing any available assets from the debtor. This analysis will also help the victims consider their options and make an informed decision whether to pursue any legal action against investors who received payouts. Most of the rationales cited in support of grand jury secrecy are not implicated here. This request is not for disclosure of any testimony that occurred before the grand jury, so there is no risk that disclosure in this case will inhibit future witnesses from

coming forward. See United States v. Procter, 356 U.S. 677, 682 (1958). There is also no risk that disclosure would influence the grand jury in any way; the grand jury that indicted this case has concluded its proceedings in this matter. See Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 219 (1979).

Disclosure in this case would also further the congressionally mandated purpose of making victims whole. See In re Application of Executive Sec. Corp., 702 F.2d 406, 407 (2d Cir. 1983) (grand jury records should be disclosed because there was minimal risk that other prospective witnesses might be discouraged to testify before other grand juries, and trustee to whom disclosure was made by the United States Attorney was attempting to recoup losses caused by fraud). Additionally, the portion of the materials that the government seeks permission to disclose that were obtained by grand jury subpoenas existed independently of the grand jury investigation.

In sum, the need of those who were defrauded by the defendant in this case outweigh the countervailing policy of the secrecy of grand jury proceedings, especially in light of the minimal intrusion on grand jury secrecy implicated by the disclosure sought here.

Wherefore, for the foregoing reasons, the government respectfully requests that this Court grant the government's motion allowing the disclosure of the information and documents described above.

Respectfully submitted,

ZANE DAVID MEMEGER
United States Attorney

_____
LOUIS D. LAPPEN
First Assistant United States Attorney

## CERTIFICATE OF SERVICE

I certify that on this date I caused a copy of the Government's Motion for Disclosure to be delivered by electronic filing and facsimile on the following defense counsel:

> John McMahon, Esquire
> 21 West Airy Street
> Norristown, PA 19401
>
> FAX: 610-272-1036

_____
LOUIS D. LAPPEN
First Assistant United States Attorney

Date: September 20, 2011